MARTEN TRANSPORT, LTD., Petitioners-Respondent-Cross-Appellant,†

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent-(in T. Ct.),

LABOR & INDUSTRY REVIEW COMMISSION, Respondent-Respondent-Cross-Respondent,

Connie LIEBRANDT, Respondent-Appellant-Cross-Respondent.

Court of Appeals

*No. 92-0244. Submitted on briefs August 11, 1992.—Decided September 9, 1992.*

(Also reported in 491 N.W.2d 96.)

†Petition to review granted.

· On behalf of the respondent-appellant-cross-respondent, Connie Liebrandt, the cause was submitted on the briefs of *Terry L. Moore* of *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.* of Eau Claire.

On behalf of the respondent-(in T. Ct.), Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David C. Rice,* assistant attorney general.

On behalf of the petitioner-respondent-cross appellant, Marten Transport, Ltd., the cause was submitted on the briefs of *Jon P. Axelrod* and *Cynthia A. Curtes* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Connie Liebrandt and the Labor and Industry Review Commission appeal the portion of a judgment that reverses the commission's Fair Employment Act award of back pay to Liebrandt. Marten Transport, Ltd. cross-appeals the portion of the judgment requiring it to rehire Liebrandt in a higher position at the first available opening.

The issue is whether each award, granted as damages for Marten's violation of Wisconsin's Fair Employment Act, was proper in light of Liebrandt's subsequent resignation. Because each award was proper, we affirm

149

that portion of the judgment ordering the rehiring, but reverse that portion denying back pay.

Marten employed Liebrandt as a dispatch clerk. Although the clerks were dispatch helpers and were not required or trained to act as dispatchers, Liebrandt performed duties commonly performed by dispatchers. During the late summer and early fall of 1987, Marten decided to eliminate the position of dispatch clerk and create assistant dispatcher positions. It was envisioned that assistant dispatchers would be trained to handle the duties of a dispatcher. Although Marten was aware that Liebrandt desired to become an assistant dispatcher, Marten filled the five assistant dispatcher positions with males without offering her the opportunity to fill this position.

Marten informed Liebrandt that her position was being eliminated and offered to transfer her to another department at the same rate of pay. Liebrandt refused and terminated her employment. Liebrandt then filed a complaint with the Equal Rights Division of the Department of Industry, Labor and Human Relations, alleging that Marten violated the Wisconsin Fair Employment Act and constructively discharged her[1] in violation of secs. 111.31 through 111.395, Stats.

---

[1]Constructive discharge has been defined as "an onerous transfer, having the purpose and effect of forcing the transferred employee to quit the employment." *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977) (quoting *Newspaper Guild v. Boston Herald-Travelor Corp.*, 238 F.2d 471, 472 (1st Cir. 1956). For a finding of constructive discharge, the "burden imposed upon the employee must cause, and be intended to cause, a change in his working conditions so difficult or unpleasant as to force him to resign." *Crystal Princeton Refining Co.*, 222 N.L.R.B. 1068, 1069 (1976).

The commission found that Marten's proffered reasons for failing to hire Liebrandt as an assistant dispatcher were pretextual and that Marten discriminated against Liebrandt because of her sex. However, the commission also found that Marten did not constructively discharge Liebrandt when it offered to transfer her to another department.

The commission ordered Marten to offer Liebrandt the next available assistant dispatcher position with full retroactive seniority rights, and to make Liebrandt whole for all losses in pay and benefits she suffered. It also ordered Marten to pay Liebrandt the amount she would have earned as an assistant dispatcher less her salary as a dispatcher clerk and other interim earnings. This amount would continue from the date the dispatcher clerk position was eliminated until such time as she was hired as an assistant dispatcher or declined the employment.

Marten appealed to the circuit court. Persuaded by the federal cases, *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114 (1st Cir. 1977); *Fancher v. Nimmo,* 549 F. Supp. 1324 (E.D. Ark. 1982); and *Schulte v. Wilson Ind.,* 547 F. Supp. 324 (S.D. Tex. 1982), which held that an employee who has been discriminated against must remain with the employer who has committed the illegal acts to be eligible for back pay, the circuit court struck down the back pay portion of the commission's order. However, the circuit court affirmed that part of the order mandating Marten to offer Liebrandt the next available assistant dispatcher position.

Marten does not challenge the commission's finding of discrimination. Therefore, its findings of fact are not at issue. Whether the remedies ordered are appropriate is the only issue on appeal and is a question of law. This

court is not bound by the commission's conclusions on matters of law. *City of La Crosse v. DNR,* 120 Wis. 2d 168, 179, 353 N.W.2d 68, 73 (Ct. App. 1984). However, when the expertise of an administrative agency is significant to the determination of a legal question, the agency's decision, although not controlling, should be given weight, especially where the agency applied its experience, technical competence and specialized knowledge to the decision. *Monroe v. Funeral Directors & Embalmers Exam. Bd.,* 119 Wis. 2d 385, 388-89, 349 N.W.2d 746, 748 (Ct. App. 1984). Thus, we will give weight to the commission's decision in this matter.

██ In arguing against both the order for back pay and rehiring, Marten cites to numerous federal cases construing the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. Wisconsin courts have looked to federal decisions for guidelines in applying the state fair employment law. *Hamilton v. DILHR,* 94 Wis. 2d 611, 620-21 n.4, 288 N.W.2d 857, 861 n.4 (1980); *Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 421 n.6, 280 N.W.2d 142, 149 n.6 (1979). However, in *Goodyear Tire & Rubber Co. v. DILHR,* 87 Wis. 2d 56, 65, 273 N.W.2d 786, 791 (Ct. App. 1978), we held that Wisconsin courts "must construe Wisconsin statutes as it is believed the Wisconsin legislature intended, regardless of how Congress may have intended comparable statutes." Thus, the federal caselaw will be looked to only as persuasive authority, which is not binding on this court.

Marten cites *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 343 (10th Cir. 1986), for the proposition that Liebrandt is not entitled to reinstatement because she was not constructively discharged. In *Derr,* the employer discriminated against a female employee by demoting her from an associate lease analyst position to an accounting

clerk position. The employee resigned and brought a civil rights claim. The district court found in favor of the employee and ordered the employer to reinstate her and give her back pay representing the difference in earnings between the two jobs for the period prior to her reinstatement. However, the appellate court reversed stating that the remedies of back pay and reinstatement were not available to the employee unless she was constructively discharged. *Id.*

Some of the authority cited in *Derr* applies only to back pay and is silent regarding reinstatement. *See Muller v. United States Steel Corp.,* 509 F.2d 923, 930 (10th Cir. 1975). Other caselaw tenuously supports the proposition with regard to reinstatement. *Irving v. Dubuque Packing Co.,* 689 F.2d 170, 175 (10th Cir. 1982) (merely said that court would not reach the reinstatement issue because errors in the constructive discharge jury instructions necessitated a new trial); *Dean v. Civiletti,* 670 F.2d 99, 101 n.2 (8th Cir. 1982) (did not grant reinstatement to the plaintiff only because she no longer wanted it). Some caselaw, however, does squarely support the proposition. *See, e.g., Fancher v. Nimmo,* 549 F. Supp. 1324, 1333 (E.D. Ark. 1982) (evidence did not support the plaintiff's theory of constructive discharge and therefore she was not entitled to reinstatement or recovery of back pay).

Marten cites even more federal authority in support of its position that back pay should not be awarded because there was no constructive discharge. *Alicea Rosado,* 562 F.2d at 120 ("Should it be found that Alicea's transfer did not amount to a constructive discharge, he would not be entitled to recover damages for lost wages as he had a duty to remain on the job collecting his regular pay until relief . . . was afforded by legal process."); *Schulte v. Wilson Indus.,* 547 F. Supp. 324,

343 (S.D. Tex. 1982) ("Since the plaintiff did not prevail on her constructive discharge claim, there is no liability to plaintiff beyond the date of termination."). Although Liebrandt and the commission attempt to distinguish most of the federal cases from the instant situation, the federal courts have strongly stated that under federal law, short of abuse amounting to a constructive discharge, employees complaining of civil rights abuses in the workplace must remain in their situation in order to obtain a remedy.

We find the motive behind this harsh rule puzzling. In *Nobler v. Beth Israel Med. Ctr.*, 715 F. Supp. 570, 572 (S.D.N.Y. 1989), the court states, "[t]he purpose of denying back pay in cases where discrimination occurs but does not rise to the level of constructive discharge is to encourage employees to stay at the place of employment in order to give employers a chance to remedy the discrimination." This court wonders if the same logic would require victims of legal malpractice to continue being serviced by their negligent lawyer in order to give the lawyer the chance to improve his or her skills.

The *Rosado* court gave a slightly different twist to the "stay on the job" rule. It wrote:

> Unless the transfer is, in effect, a discharge, the employee has no right simply to walk out; he must accept the orders of his superior, even if felt to be unjust, until relieved of them by judicial or administrative action. Were this not so, a public employee would be encouraged to set himself up as the judge of every grievance; and the [employer][2] would end up paying for periods of idleness while the grievance was being adjudicated.

---

[2]The actual text of this quote states the public taxpayer in place of the employer because the employer was a governmental entity.

154

*Rosado,* 562 F.2d at 119. We also find this argument specious because, under Wisconsin law, any idleness is "paid for" by the plaintiff herself because of her duty to mitigate her damages. For example, assume a female plaintiff proved an unfair employment violation. If she is making $15 per hour and is then unfairly demoted to a job making $10 per hour and then quit that job, there is no question that under Wisconsin law the most that she could collect in back pay damages would be the $5 per hour difference. This is based on the theory that she has to mitigate her damages. However, her quitting or staying on the job should have no effect on her right for recovery of damages and reinstatement.

While we have looked to the federal caselaw as guidelines, we are not persuaded by their rationale and will not follow their decisions. Instead, we will look to the legislature's intent in adopting the Fair Employment Act.

██

Section 111.39, Stats., gives DILHR the power to employ examiners and hold hearings on discrimination claims. Section 111.39(4)(c) states:

> If, after hearing, the examiner finds that the respondent has engaged in discrimination . . . the examiner shall make written findings and *order such action by the respondent [employer] as will effectuate the purpose of this subchapter,* with or without back pay. . . . Interim earnings or amounts earnable with reasonable diligence by the person discriminated against . . . shall operate to reduce back pay otherwise allowable. (Emphasis added.)

The purposes of the Fair Employment Act are twofold: (1) to make the individual victims of discrimination "whole"; and (2) to discourage discriminatory practices

in the employment area. *Watkins v. LIRC,* 117 Wis. 2d 753, 763, 345 N.W.2d 482, 487 (1984).

██

The commission's order that Marten offer Liebrandt the next available assistant dispatcher position effectuates both identified purposes of the Fair Employment Subchapter. It makes Liebrandt whole by giving her the position that she was deprived of, and discourages discriminatory practices by showing others that gender discrimination will not be allowed, and mandating that Marten not restrict women from holding assistant dispatcher positions. The order of back pay also effectuates the purposes of making victims whole and discouraging discrimination, by putting the victim in nearly the same financial position she would have been in had the discrimination not occurred.

The judgment of the circuit court is therefore affirmed to the extent that it ordered the hiring of Liebrandt but reversed to the extent that it disallowed the award of back pay.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. Costs awarded to Liebrandt and the commission.