Barry J. HOLLOWAY, Plaintiff-Appellant,

v.

K-MART CORPORATION, Defendant-Respondent.

Court of Appeals

*No. 82–719. Submitted on briefs February 9, 1983.—*
*Decided April 26, 1983.*
(Also reported in 334 N.W.2d 570.)

For the plaintiff-appellant the cause was submitted on the briefs of *Kenneth H. Conway, Jr.,* and *Annette L. Gerhardt* and *Conway Law Offices, S.C.,* of Baraboo.

For the defendant-respondent the cause was submitted on the brief of *Dempsey, Magnusen, Williamson & Lampe,* of Oshkosh.

Before Gartzke, P.J., Dykman, J. and W.L. Jackman, Reserve Judge.

DYKMAN, J.   Plaintiff appeals from a judgment notwithstanding the verdict which dismissed his claims against K-Mart Corporation for breach of an employment contract, bad faith termination of the contract, and defamation.  We hold that the record contained credible evidence to support the jury's verdict for plaintiff on his defamation claim.  We therefore reverse the judgment for K-Mart on the defamation claim, but affirm the judgment dismissing the breach of contract and bad faith claims.

Plaintiff was hired by K-Mart in August 1978 to work as a stock handler.  He was 16 years old and about to start his junior year in high school.  He worked parttime through the following school year, fulltime during the summer of 1979, and parttime for the first part of the fall of 1979.  On the evening of November 7, 1979, while at work, plaintiff and Brian Zirzow ate a candy bar and some M&M's they found on a shelf in one of the back

rooms. The candy belonged to K-Mart, but was not near the area in the stockroom where candy was kept. Plaintiff and Brian were paged by name over the public address system later that evening, although it was K-Mart's usual policy to page employees by number. The store manager told the boys that another employee had seen them eating the candy. He also told them to return the next day to find out whether they would be allowed to keep their jobs, but permitted them to keep working for the rest of the evening. On November 8, plaintiff returned to the store, where he wrote out and signed a statement confessing that he had eaten 17¢ worth of M&M's, and paid that amount to K-Mart. Plaintiff was discharged on November 8, effective November 7. Additional facts will be stated in the opinion.

*Breach of Contract*

When plaintiff was hired by K-Mart in August 1978, he signed the following statement:

It is understood and agreed, that this employment is not for any definite period or succession of periods, and that it may be terminated either by myself or by the Corporation at any time without notice, and wages shall be due me only up to the day and hour of termination.

Employment contracts which specify no term of duration and which fix compensation at a certain amount per day, week or month are terminable at the will of either party. *Forrer v. Sears, Roebuck & Co.*, 36 Wis.2d 388, 393, 153 N.W.2d 587, 589 (1967). Discharge of an employee hired under such a contract does not constitute a breach of the contract justifying the recovery of damages. *Id.* K-Mart therefore could discharge plaintiff at any time, with or without cause, and not be liable for breach of contract.

Plaintiff argues that K-Mart had a policy of "writing up" an employee three times before discharging the employee. Several K-Mart employees, including plaintiff, testified that they understood this to be K-Mart's policy. The store manager acknowledged that K-Mart's policy provided an employee with at least three opportunities to "correct the situation" before being fired. Plaintiff contends that the jury could have found that this policy constituted a modification of the employment contract.

An employer may adopt a policy regarding termination of employees. If the employer and employee agree to that policy, it becomes a contract. Here, the parties' agreement was to the contrary. The employer's common-law right to discharge an employee at any time without cause was not limited by its self-imposed policies regarding discharge. The trial court did not err in dismissing plaintiff's claim for breach of contract.

*Bad Faith*

Plaintiff contends that even if K-Mart could discharge him at will, the manner in which he was discharged contravenes public policy regarding the protection of minors, and that K-Mart engaged in bad-faith conduct in terminating his employment.

The jury could have found on the evidence that K-Mart's manager and director of security "browbeat" plaintiff in a small room for over an hour, did not contact his parents or ask him if he wanted them present, required him to write out and sign a confession which was in large part dictated from a form supplied by K-Mart, and told him that if he did not cooperate they could call the police and he would be arrested for shoplifting and fined $50–$100.

The jury could have believed evidence that K-Mart employees were permitted to eat unsaleable candy kept in

the employees' lounge, at the service desk near the front of the store, and in the merchandising office; that adult and teenaged employees regularly ate candy during working hours, anywhere in the store; and that K-Mart's assistant managers had occasionally given candy to employees to eat. Plaintiff and Brian Zirzow both testified that they believed the candy they ate November 7 was unsaleable and had been left on the shelf waiting to be discarded. Plaintiff had never been written up for misbehavior before this incident. Plaintiff and Brian both testified that the manager told them on November 7 that someone had been watching the candy—that it had been set out for people to take, that it had been moved around that store, and that it was being watched. The manager testified: "The best of what I can recall I said was that candy was there; it had been hidden. . . . [T]he candy had been moved. . . . I did tell them that the candy had been hidden there and that we were observing it." The jury could have inferred from this that the K-Mart management had planted the candy hoping to catch an employee eating it, so that they could fire him or her as a warning to other employees.

In *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 680, 271 N.W.2d 368, 371 (1978), the supreme court held that the holder of an insurance policy "may assert a cause of action in tort against an insurer for the bad faith refusal to honor a claim of the insured." The court said: "[T]he tort of bad faith is not a tortious breach of contract. It is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Id.* at 687, 271 N.W.2d at 374. The duty arising out of the relationship between the contracting parties was identified as follows: " 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' " *Id.* at 689, 271 N.W.2d at 375 (citation

omitted). The court emphasized the "fiduciary duty" of the insurer toward the insured, which was breached by the insurer's failure to deal in good faith with the insured. *Id.*

No reported Wisconsin case, however, has held that an employer's right to terminate an employment contract at will is limited by a duty to exercise good faith. In two cases, this court said that where a discharge contravened public policy or was motivated by bad faith on the part of the employer, the discharged employee could recover damages. *Brockmeyer v. Dun & Bradstreet*, 109 Wis. 2d 44, 46–47, 325 N.W.2d 70, 72 (Ct. App. 1982); *Ward v. Frito-Lay, Inc.*, 95 Wis. 2d 372, 376–77, 290 N.W.2d 536, 537–38 (Ct. App. 1980). Those statements are dicta. In both cases, this court reversed the trial court's judgment in favor of the complaining employee and remanded with directions to dismiss the complaint because the employee had failed to establish that the employer was guilty of bad faith or had violated public policy. *Brockmeyer,* 109 Wis. 2d at 53, 325 N.W.2d at 75; *Ward,* 95 Wis. 2d at 376–77, 290 N.W.2d at 538. The language in *Brockmeyer* and *Ward* discussing bad faith and public policy doctrine is not precedent. Both cases were recently questioned in Ryan, *The Status of Wrongful Discharge in Wisconsin,* 56 Wis. Bar Bull, 22, 23 (Apr. 1983).

We are reluctant to create a bad-faith exception to the rule that employment contracts are terminable at will in the absence of a contrary contractual or statutory provision. Such an exception is more appropriately created by the supreme court, in the exercise of its function of overseeing and implementing the statewide development of the law. *State v. Mosley,* 102 Wis. 2d 636, 665, 307 N.W.2d 200, 216 (1981). We are particularly loathe to depart from established precedent when, as here, the supreme court has refused our certification. This court's primary

function is to correct errors made at trial. *Id.* at 665, 307 N.W.2d at 216–17. We find no error in the trial court's dismissal of plaintiff's claim for bad faith termination of his employment contract.

## Defamation

The jury found that K-Mart defamed plaintiff. K-Mart renewed its motion to dismiss and moved for a directed verdict, for judgment notwithstanding the verdict, and to set aside the verdict and grant a new trial, pursuant to secs. 805.14(5)(d), 805.14(5)(b), and 805.15(1), Stats.[1] The trial court granted K-Mart's motion to dismiss and motion for a directed verdict. The court held that plaintiff had presented no credible evidence showing that K-Mart's manager or director of security had publicized the information that plaintiff had been fired for stealing.[2]

The standard for granting a directed verdict is set out in sec. 805.14(1), Stats.:

---

[1] Section 805.14(5), Stats., provides in part:

(b) A party against whom a verdict has been rendered may move the court for judgment notwithstanding the verdict in the event that the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment.

. . . .

(d) A party who has made a motion for directed verdict or dismissal on which the court has not ruled pending return of the verdict may renew the motion after verdict. In the event the motion is granted, the court may enter judgment in accordance with the motion.

K-Mart does not concede that the verdict for plaintiff was proper. The document signed by the trial court, which is entitled "judgment notwithstanding the verdict," therefore should be entitled "directed verdict."

[2] K-Mart argues that the trial court correctly directed a verdict because there was no credible evidence to show that K-Mart publicized the defamatory statement. It does not argue that plaintiff failed to prove other elements of the tort of defamation.

No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

A case should be taken from the jury and a verdict directed only if the evidence gives rise to no dispute as to the material issues or when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion. *Wis. Natural Gas v. Ford, Bacon & Davis Constr.*, 96 Wis.2d 314, 339, 291 N.W.2d 825, 837 (1980). The weight and credibility of the evidence, and the inferences to be drawn therefrom, are matters for the jury. *Id.* at 338, 291 N.W.2d at 837. The reviewing court gives great weight to the trial court's decision that a verdict must be directed as a matter of law, but will set aside the trial court's action if there is credible evidence which supports the verdict. *Leatherman v. Garza*, 39 Wis.2d 378, 387, 159 N.W.2d 18, 23 (1968).

Credible evidence supports the jury's verdict. Lynn Nickel, an employee of K-Mart, testified that another K-Mart employee told her on the evening of November 7 that plaintiff and Brian were being fired for stealing candy. Plaintiff and Brian both testified that they did not tell anyone at the store that they had been fired. There was no evidence that anyone besides plaintiff, Brian and the manager was present at their November 7 interview. If the jury believed Lynn's testimony, they could have inferred that K-Mart's manager had communicated the fact of plaintiff's termination to another K-Mart employee on the evening of November 7. This was not the *only* reasonable inference the jury could have drawn from the

evidence, but it was *a* reasonable inference they could have drawn. When more than one reasonable inference can be drawn from the evidence, this court must accept the inference drawn by the fact-finder. *Herlitzke v. Herlitzke,* 102 Wis. 2d 490, 494, 307 N.W.2d 307, 310 (Ct. App. 1981). The trial court erred in directing a verdict for K-Mart on plaintiff's claim for defamation.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded for further proceedings consistent with this opinion.