Donald BUKSTEIN, M.D., Plaintiff-Respondent,†

v.

DEAN HEALTH SYSTEMS, Inc., Defendant-Appellant.

Court of Appeals

*No. 2016AP920. Submitted on briefs March 2, 2017.
—Decided July 20, 2017.*

2017 WI App 54

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lynn M. Stathas*, *Robert S. Driscoll*, and *Malinda J. Eskra* of *Reinhart Boerner Van Deuren* S.C., Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Lester A. Pines*, *Tamara B. Packard*, and *Christa O. Westerberg* of *Pines Bach LLP*, Madison.

Before Lundsten, Sherman, and Blanchard, JJ.

¶ 1. BLANCHARD, J.    Dean Health Systems, Inc., terminated the employment of physician-employee Donald Bukstein "without cause," pursuant to an "at-will" provision in a written employment agreement between Dean and Bukstein. Bukstein sued Dean for breach of contract and breach of the duty of good faith and fair dealing in connection with the termination. The circuit court denied Dean's motion for summary judgment. At a jury trial, Bukstein prevailed on both claims. Dean appeals the judgment entered in favor of Bukstein, as well as the order of the circuit court denying Dean's motion for summary judgment and the court's denial of Dean's post-verdict motions.

¶ 2.    Dean argues that Bukstein's termination was consistent with the at-will provision in the employment agreement, which allows either party to terminate the employment relationship, at any time and "without cause." Dean also argues that it was under no duty to terminate Bukstein only in good faith, because Bukstein was an at-will employee under the employment agreement. Therefore, Dean argues, the circuit court should have granted Dean's motion for summary judgment on both of Bukstein's claims.

¶ 3.    We agree with Dean that the case should have been dismissed on summary judgment, because the at-will provision authorized Dean to terminate Bukstein without cause. Accordingly we reverse and remand to the circuit court to enter an order granting Dean's motion for summary judgment and dismissing Bukstein's complaint in its entirety.

## BACKGROUND

¶ 4.    The parties do not dispute the following pertinent facts. Dean's physician-employees are called

691

shareholders. Bukstein was employed as a Dean shareholder from 1981 to 2012. In 2008, Dean and Bukstein entered into the written Shareholder Employment Agreement ("the employment agreement").[1] The employment agreement contains an at-will provision giving Dean the right to terminate its employment relationship with Bukstein "at any time" and "without cause," so long as two conditions were met: (1) Dean provided Bukstein with 90 days' written notice, and (2) at least three-fourths of the members of the Dean Board of Directors voted to terminate his employment "without cause." Bukstein had a parallel right under the at-will provision to end his employment relationship with Dean. Bukstein could terminate the employment relationship, so long as he first provided Dean with 90 days' written notice, at any time and could do so for any reason or no reason. In sum, assuming compliance with the 90–day notice requirement, Dean could invoke the at-will provision to terminate Bukstein "without cause," or Bukstein could sever the employment relationship, and in either case Bukstein would receive a final 90 days of salary and benefits.[2]

¶ 5. Three adult patients of Bukstein, on an individual basis and in each of three separate years, complained that he made physical contact with them during the course of examination or treatment that made them uncomfortable. As a result, Dean's Office of

---

[1] The parties executed the original employment agreement in 1992, and executed another employment agreement in 2008. However, on appeal neither party argues that any differences between the two agreements matter to any issue raised on appeal.

[2] It does not matter here, but the employment agreement also permitted Dean to terminate Bukstein without notice for "cause." Neither party relies on the "cause" feature and we make only passing references to it in our discussion.

Medical Affairs, which investigates complaints against Dean physicians, eventually conducted an investigation.

¶ 6. After Dean completed its investigation, there were several meetings of the Dean Board. In addition, pursuant to a Dean management policy, committees met to discuss findings from the investigation results. We describe the management policy document in greater detail in the discussion below. For now it is sufficient to know that the policy is contained in a document promulgated after and separate from the employment agreement and that, with respect to the investigation into Bukstein's misconduct, Dean followed some of the procedures outlined in that policy. Dean did not, however, terminate Bukstein under that policy. Rather, the Board relied on its understanding that it had the authority to terminate Bukstein without cause based on Bukstein's at-will employment status specified in the employment agreement. Dean gave Bukstein an opportunity to be heard at each meeting. After initially voting against terminating Bukstein, the Board voted to terminate Bukstein's employment "without cause," expressly relying on the at-will provision.

¶ 7. Relying on the Dean management policy, Bukstein filed this action alleging two causes of action related to the termination: (1) breach of contract and (2) breach of the duty of good faith and fair dealing. Dean moved for summary judgment on both causes of action. The circuit court denied Dean's motion. At trial, the jury returned verdicts in Bukstein's favor. Dean filed post-verdict motions, which the circuit court denied. The court entered final judgment on the jury's verdict. Dean appeals.

¶ 8. We include additional facts below as necessary to our discussion.

## DISCUSSION

■■■■

¶ 9. As noted, we conclude that Dean was entitled to summary judgment dismissing Bukstein's complaint. We review denials of summary judgment de novo. *Wolf v. F&M Banks*, 193 Wis. 2d 439, 449, 534 N.W.2d 877 (1995). Summary judgment is appropriate when there are no genuine disputes as to the material facts and the moving party is entitled to judgment as a matter of law. *Id.*

¶ 10. In the background section, we explained that the employment agreement between Dean and Bukstein contains an at-will provision allowing Dean to terminate Bukstein at any time, with notice, without cause. As we explain below, the dispute here involves whether a Dean management policy document, which Bukstein contends gives him greater employment protection, modifies the employment agreement or is an additional stand-alone agreement between the parties. Bukstein relies on the policy document as support for both his contract claim and his good faith and fair dealing claim. We address each claim in turn.

### Breach Of Contract Claim

¶ 11. As referenced above, the employment agreement contains an at-will provision giving Dean the right to terminate Bukstein "without cause," so long as Dean met the notice and Board vote requirements. Bukstein does not dispute that Dean met these

requirements in terminating him and that, if the at-will provision governs, his claims should have been dismissed.

¶ 12. Bukstein's breach of contract argument hinges entirely on Dean's "Physician Practice and Performance Management Policy." This policy document is just over two pages in length and provides guidelines for Dean investigations into allegations against physician-employees such as Bukstein that could lead to discipline, including termination of employment. For ease of reference, we refer to this document as "the Dean policy," or "the policy." Dean issued the policy in 2008, and Bukstein was given a copy. It is undisputed that neither Bukstein nor any Dean representative ever signed the policy.

¶ 13. Significantly here, the Dean policy makes no reference to any provision in the employment agreement, including the at-will provision. To provide one illustrative example of its contents, under the Dean policy "[c]oncerns regarding physicians may be forwarded by employees or their supervisors to [Dean's] Office of Medical Affairs," which has discretion under the policy to determine if any investigation is warranted. The policy gives Dean broad discretion in how to resolve an investigation:  it may take no action at all, or any range of other actions, including the discretion to "[t]ake any other action [that it] deems appropriate."

¶ 14. With that additional background, Bukstein's entire breach of contract argument is that the Dean policy "chang[es] the employment relationship" by creating a "contract separate from or supplemental to the [employment agreement.]" The problem with Bukstein's reliance on the policy is that, under control-

695

ling case law, the policy does not modify Dean's right to terminate Bukstein under the at-will provision in the employment contract.

¶ 15.   The basic at-will employment rule is that "[a]t-will employees are terminable at will, for any reason, without cause and with no judicial remedy." *Bammert v. Don's Super Valu, Inc.*, 2002 WI 85, ¶ 8, 254 Wis. 2d 347, 646 N.W.2d 365. Therefore, the termination of an employee who has agreed to enter into an at-will employment relationship "does not constitute a breach of contract justifying the recovery of damages." *Holloway v. K-Mart Corp.*, 113 Wis. 2d 143, 145, 334 N.W.2d 570 (Ct. App. 1983) (citing *Forrer v. Sears, Roebuck & Co.*, 36 Wis. 2d 388, 393, 153 N.W.2d 587 (1967)). Bukstein does not contest that this is the basic at-will employment rule, nor does he contest that he agreed to enter into an at-will employment relationship with Dean, as set forth in the employment agreement.

¶ 16.   The question here is whether a management policy, promulgated after the parties entered into an at-will employment agreement, modifies that agreement in a manner that effectively trumps the at-will provision in the agreement. We conclude that case law teaches that a policy like the one here does not modify or take precedence over an at-will employment agreement because of what we will call the "only when" rule, which we now quote and discuss further below.

¶ 17.   The "only when" rule provides that policies (whether denominated as a "policy," or bearing another label, such as "handbook," "manual," or "procedure")

alter an established at-will employment relationship "*only when*" the policy "contains express provisions from which it can reasonably be inferred that the parties intended to bind each other to a different employment relationship" than the established at-will relationship. *Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 757, 601 N.W.2d 318 (Ct. App. 1999) (emphasis added) (citing *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 979, 473 N.W.2d 506 (Ct. App. 1991)).

¶ 18. Bukstein does not purport to dispute the existence of the "only when" rule, although as we will explain he makes arguments that ignore it. Rather, what he appears to intend to argue is that, on the undisputed facts here, the Dean policy satisfies the "only when" rule. This presents a question of contract interpretation that we review de novo. *See Wolf*, 193 Wis. 2d at 450 (citing *Bantz*, 163 Wis. 2d at 978.).

¶ 19. As noted, Bukstein argues that the Dean policy "chang[es] the employment relationship" in some manner, creating a triable issue as to whether Dean followed its policy in terminating Bukstein. In Bukstein's view, the triable issue is whether Dean breached the new contract created by the policy by failing to follow its terms in connection with his termination, or whether Dean breached its duty of good faith and fair dealing based on the now-modified employment agreement. More specifically, Bukstein asserts that there is a factual dispute as to whether Dean "deprived" Bukstein of "procedural rights" provided to him under the policy by preventing him from presenting Dean investigators with information that Bukstein contends the Dean Board "should [have] consider[ed] as part of" the Board's investigation of his conduct. More concisely, Bukstein effectively argues

that if his "only when" contract interpretation argument is correct, then there is a triable factual issue. However, we conclude that Bukstein's contract interpretation argument is flawed.

¶ 20.  Bukstein fails to point to any language in the Dean policy that could support a reasonable inference that the parties intended to change their at-will employment relationship. For this reason, applying the pertinent case law to the undisputed facts, we conclude that Dean could not have breached its contract with Bukstein when it relied on the at-will provision to terminate Bukstein "without cause." *See Holloway*, 113 Wis. 2d at 145–46 (an employer may terminate its relationship with an employee who is working under an at-will contract "at any time, with or without cause, and not be liable for breach of contract," notwithstanding employer's "self-imposed policies" used to address allegations of employee misconduct).

¶ 21.  We now explain our conclusion further, by discussing case law that addresses circumstances in which application of the "only when" rule either does or does not result in a changed at-will relationship, before addressing specific arguments that Bukstein makes.

¶ 22.  In applying the "only when" rule, this court has concluded that the mere existence of an employer-issued policy that provides guidelines for employees or that sets forth employer policies and procedures is not sufficient to alter an at-will employment relationship. *See Helland*, 229 Wis. 2d at 754, 757 (" 'working guide summarizing [hospital's] employment policies and procedures' " did not alter at-will relationship) (applying *Ferraro v. Koelsch*, 124 Wis. 2d 154, 169, 368 N.W.2d 666 (1985)); *Bantz*, 163 Wis. 2d at 979–83 (employee

handbook, personnel manual, and separate employee conduct policy did not create contract that abrogated at-will employment relationship). Instead, an employee must prove that the subsequently issued policy reflects the intent to create a contractual relationship that restricts the ability of the employer to terminate the employee at-will, beyond the mere fact that an employer has issued one or more policies that postdate the establishment of the at-will relationship. *See, e.g., Wolf*, 193 Wis. 2d at 450, 455 (a code of ethics provided by an employer to its employees did not convert "the employment relationship . . . from one at will to one of express contract."); *Bantz*, 163 Wis. 2d at 983–84.

¶ 23.   *Ferraro*, cited above, provides an example of circumstances in which an at-will relationship *was* altered under the "only when" rule. The at-will relationship was altered in that case because it could reasonably be inferred from the express terms of a handbook that the parties intended to rely on the terms to bind each other to a different employment relationship. *See Ferraro*, 124 Wis. 2d 154. More specifically, the handbook contained provisions that provided "credible evidence" of the parties' intent to create a new employment relationship based on explicit promises the employer made to the employee. *Id.*, 124 Wis. 2d at 157, 165–66. These express provisions included rules for employee conduct and agreements by employees that they would abide by the conduct rules in exchange for:   "continued employment;" a progressive discipline structure; a layoff procedure based on seniority; a distinction between probationary and nonprobationary employees; and the fact that "a discharge

would only be for 'just cause.' "[3] *Id.* at 163–65. For these reasons, the court concluded, the terms of the handbook indicated the parties' intent to change their employment relationship from one at-will to one governed by an "express contract" created by the handbook terms. *Id. Cf. Bantz,* 163 Wis. 2d at 981–83 (facts that "disciplinary procedures were stated in permissive, not mandatory, terms" in employer-issued handbook and policies and that the policies suggested "but [did] not mandate" a progressive discipline structure supported conclusion that they did not reflect employer intent to abandon at-will relationship).

¶ 24. The facts here are virtually the opposite of those in *Ferraro.* The Dean policy contains language making clear that the policy provides merely one way to proceed, one alternative route. In contrast, the handbook in *Ferraro* expressly obligated the employer to, among other things, terminate employment only for just cause. The facts here much more closely resemble the facts in *Holloway,* 113 Wis. 2d 143, and *Wolf,* 193 Wis. 2d 439, which we now discuss.

¶ 25. In *Holloway,* as here, the employee signed an agreement with an at-will provision. 113 Wis. 2d at 145. The employer had an unwritten policy of discharging employees only after the employer had issued three

---

[3] We note a potentially puzzling aspect of *Ferraro v. Koelsch,* 124 Wis. 2d 154, 368 N.W.2d 666 (1985). It might seem logical to think that a provision in a new policy that states that termination is allowed only for just cause should be in itself sufficient to end the analysis in favor of the employee under the "only when" rule. However, it appears that much of the pertinent discussion in *Ferraro* would be superfluous if that were the rule.

In any case, however, there is no such provision in the Dean policy here, and therefore we need address this concept no further.

warnings to the employee. *Id.* at 146. Despite this policy, the employee was terminated without first receiving three warnings. *Id.* at 145. We concluded that the three-warnings policy did not modify the at-will employment contract in any way, and the employee therefore could not sustain a claim for breach of contract, stating: "The employer's common-law right to discharge an employee at any time without cause was not limited by its self-imposed policies regarding discharge." *Id.* at 146. By way of further explanation, the *Holloway* court stated that the employer's "self-imposed" three-warning policy did not "become[] a contract" addressing the at-will employment topic or the topic of how discipline could be imposed, because the parties' original at-will agreement "was to the contrary." *Id.* at 145–46. Specifically, the parties had agreed through the at-will provision that the "employment [was] not for any definite period or succession of periods, and that it may be terminated either by [the employee or the employer] at any time . . . ." *Id.* at 145. We concluded that the circuit court "did not err in dismissing [the employee's] claim for breach of contract," because the parties did not agree to a contract "regarding termination of employees" that differed from the original agreement, which gave the employer the "right to discharge an employee at any time without cause." *Id.* at 146.

¶ 26. Similarly, *Wolf* is instructive. The separate document in *Wolf* was a "code of ethics." This ethics code established guidelines for employee conduct in such areas as conflicts of interest, confidentiality, dishonesty, and fraud, and further provided that any employee who was the subject of a reported violation of the code "would be given . . . an opportunity to respond," presumably to a supervisor or investigating

701

committee, "before the matter would be reported to the board of directors for action . . . ." *Wolf*, 139 Wis. 2d at 446–47, 450. Relying on a comparison with the handbook in *Ferraro*, the employee argued that the ethics code "converted" the employment relationship "from one at will to one of express contract." *Id.* at 450. We rejected this argument, concluding that the *Wolf* facts differed from those in *Ferraro* "on nearly all of the factors considered by the *Ferraro* court." *Id.* at 451.

¶ 27.  More to the point, the facts in *Wolf* are comparable to the facts here. Wolf attempted to support his argument that the ethics policy changed the at-will relationship based on the policy directive that the employer allow Wolf an opportunity to be heard in connection with a claim that Wolf had violated the code. We apparently accepted the premise that the policy required the employer to give Wolf an opportunity to respond to allegations against him, and nevertheless rejected the proposition that Wolf was no longer an at-will employee. *Id.* at 452. We explained that "the right to be heard relates to 'guidelines' for employee conduct," and does not create "fixed rules and regulations," and reasoned that the mere "right to be heard" in connection with an investigation is not sufficient to establish that an employer intends to create a binding contractual obligation. *Id.* "It does not follow per se that an employer has abandoned the employment-at-will relationship simply because an employee is allowed to be heard regarding an alleged infraction." *Id.* The same is true here. Nothing in the Dean policy shows an intent to abandon the employment-at-will relationship. At best, the policy provides an alternative route that Dean may or may not pursue in addressing complaints. Nothing in the

policy indicates an intent that the policy supplant the at-will provision in the employment contract.

¶ 28.   More broadly, excepting *Ferraro*, in each of the cases cited above the separate policy does not contain language indicating an intent to alter the at-will relationship. We now briefly summarize why we reach the same conclusion here.

¶ 29.   First, unlike the employment agreement, neither party signed the Dean policy.

¶ 30.   Second, the Dean policy is expressly designated a "management policy" and fails to make any reference, explicit or implicit, to the at-will provision in the employment agreement.

¶ 31.   Third, the Dean policy generally uses permissive language, merely permitting Dean to take certain steps in connection with investigations and potential disciplinary actions, without obligating Dean to take those steps.[4] For example, Dean is allowed under the policy to determine that no investigation into a particular complaint was warranted, and, if it does choose to investigate, the policy provides that Dean "*may* take corrective action, which *may* include one or more of the following . . . ." (emphasis added). *See, e.g., Bantz*, 163 Wis. 2d at 980. In addition, the Dean policy does not impose on Dean the requirement to use any form of progressive discipline, but instead places no limit on the actions the Dean Board could take following a Dean investigation:   termination, no

---

[4] At ¶ 36 *infra* we discuss one right-to-be-heard feature of the Dean policy, highlighted by Bukstein, that does create an obligation for Dean. There we explain why we conclude that the existence of that mandatory feature does not support Bukstein's position under the applicable case law.

action at all, and anything in between, including whatever action the Dean investigators "deem[] appropriate." *See id.* at 982.

¶ 32. Bukstein's arguments all flounder because of Bukstein's failure to come to grips with the "only when" rule. For example, Bukstein argues that we should construe the Dean policy as a contract that supplants the employment agreement on the at-will topic because the policy "does not disclaim that it is a contract" or contain express provisions indicating that it is *not* intended to create a binding contract between the parties. Along similar lines, Bukstein contends that the facts that distinguish this case from such precedent as *Ferraro* should not matter to our analysis, because all that matters is the fact that Bukstein continued to work for Dean after the policy was issued, thereby binding both Dean and Bukstein to its terms. These arguments, like others addressing similarities and differences with prior cases, are flawed because they ignore the "only when" rule. *See Bantz*, 163 Wis. 2d at 979 (employer policies may serve to alter at-will relationship only when they contain "express provisions from which it reasonably could be inferred that the parties intended to bind each other to a different relationship.") (citing *Ferraro*, 124 Wis. 2d at 165).

¶ 33. We now briefly discuss what remains of Bukstein's arguments, a series of meritless attempts to distinguish cases such as *Holloway* and *Wolf* and to align his facts with those in *Ferraro* and *Bass*.

¶ 34. Bukstein argues that *Holloway* does not bind us because *Holloway* "pre-dates *Ferraro*, and has not been cited in a published appellate case since

1992." We reject this argument.[5] Although *Holloway* pre-dates *Ferraro*, neither *Ferraro* nor any other decision brought to our attention overrules *Holloway* and, therefore, *Holloway* remains binding. *See Vorwald v. School Dist. of River Falls*, 167 Wis. 2d 549, 558, 482 N.W.2d 93 (1992) (a post-*Ferraro* case, relying on *Holloway* and holding that a "single personnel policy" did "not rise to the level of a contract, either implied or otherwise.").

¶ 35.    Bukstein argues that *Wolf* can be distinguished on the ground that the Dean policy sets forth "procedures for investigating allegations precisely of the sort Bukstein faced," while Wolf was terminated for behavior not contemplated by the ethics code policy at issue. We reject Bukstein's attempt to distinguish *Wolf* on this ground. Again, the argument side-steps the "only when" rule. In addition, Bukstein was not terminated for "cause" pursuant to the Dean policy, but instead was terminated "without cause," as Dean was permitted to do under the express terms of the employment agreement.

¶ 36.    Bukstein also argues that *Wolf* is distinguishable due to one feature of the Dean policy that is not permissive, namely, the feature giving Bukstein a right to be heard. We agree with Bukstein that the

---

[5] We also reject Bukstein's passing attempt to distinguish *Holloway v. K-Mart Corp.*, 113 Wis. 2d 143, 334 N.W.2d 570 (1983), on the ground that the policies in *Holloway* "were not written or mandatory." First, Bukstein does not attempt to develop this argument. Second, the *Holloway* court gives no indication that it mattered to the court's analysis whether the employer's policies were issued orally or were permissive. The *Holloway* court did not refer to these facts in support of its conclusion and the court's reasoning suggests that it would have reached the same conclusion even if the policy had been written or its terms mandatory.

Dean policy requires that Dean provide Bukstein with the right to be heard in connection with investigations of his conduct. However, it was the same in *Wolf*. That is, we read *Wolf* to accept, for purposes of resolving the appeal in that case, the employee's assertion that the pertinent portions of the procedures, such as the right to be heard, were mandatory for the employer in conducting its investigations into employee misconduct. *See Wolf*, 139 Wis. 2d at 452. And, as explained above, the mere guarantee to an employee of a right to be heard in connection with an investigation is not sufficient evidence of an intent by the parties to alter an at-will relationship. Put simply, even if proceeding under the Dean policy would have required Dean to consider Bukstein's responses to allegations, any such requirement does not affect Dean's right to simply end the employment relationship under the at-will provision. As we have explained, the policy provides an alternative route to use in addressing complaints; it does not modify or override the at-will relationship.

¶ 37. In a related argument, Bukstein suggests that the Dean policy is unlike those in *Holloway*, *Wolf*, *Helland*, and *Bantz*, and instead is like those at issue in *Ferraro*, 124 Wis. 2d 154, and *Bass v. Ambrosius*, 185 Wis. 2d 879, 520 N.W.2d 625 (Ct. App. 1994), which applies the *Ferraro* factors. However, the differences between the pertinent facts here and those in *Ferraro* and *Bass* show why those cases do not help Bukstein.

¶ 38. As to *Ferraro*, Bukstein's arguments overlook the significant differences between the facts in that case and the facts here. Unlike in *Ferraro*, the Dean policy does not do *any* of the following: establish a set of rules governing physician conduct; establish a layoff procedure based on seniority; establish

categories of probationary or non-probationary employees; recite a progressive structure for discipline; or provide that termination may only be for "just cause." *See Ferraro*, 124 Wis. 2d at 159–60; *see also Wolf*, 193 Wis. 2d at 451–52 (applying *Ferraro* to conclude that employer policy at issue did not create contract or abrogate at-will employment relationship).

¶ 39.   Turning to *Bass*, this court concluded, under the reasoning of *Ferraro*, that hospital bylaws created a new contract between a hospital and a physician with hospital staff privileges. *Bass*, 185 Wis. 2d at 884, 886–87. Notably, however, the following facts were present in *Bass* and are not present in the instant case:   Bass was not an employee of the hospital, was not working under an employment agreement, and his relationship with the hospital was not governed by any document that contained an at-will provision. *See id.* at 886–88. There are other, significant differences between the facts here and the facts in *Bass*, but we need not detail them all. *Bass* is plainly inapposite.

¶ 40.   In sum, the "only when" rule is not satisfied on the undisputed facts. There is nothing in the Dean policy that gives any indication that it is intended to modify the employment agreement in any respect, much less any express provision that indicates intent to alter the at-will employment relationship specifically. Therefore, under our case law, the basic at-will employment rule remained in place when Bukstein was terminated, allowing Dean to "discharge [Bukstein] at any time, with or without cause, and not be liable for breach of contract." *See Holloway*, 113 Wis. 2d at 145.

### Duty Of Good Faith And Fair Dealing

¶ 41.   Our resolution of the first issue necessarily resolves the second. This is because our supreme court

has "refuse[d] to impose a duty to terminate in good faith into employment contracts," explaining that "[t]o do so would 'subject each discharge to judicial incursions into the amorphous concept of bad faith.' " *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 569, 335 N.W.2d 834 (1983) (quoted source omitted).

¶ 42. In *Brockmeyer*, the court explained that it is "unnecessary and unwarranted for the courts to become arbiters of any termination that may have a tinge of bad faith attached," because imposing "a good faith duty to terminate would unduly restrict an employer's discretion in managing the work force." *Id.*

¶ 43. Other cases have embraced and recognized *Brockmeyer*'s holding, though they seem to imply that *Brockmeyer*'s holding might be limited to terminations of employees with at-will employment contracts. *See, e.g, Bammert*, 254 Wis. 2d 347, ¶ 10 ("The court in *Brockmeyer* specifically declined to engraft a broad implied duty of good faith onto the at-will employment relationship."); *Scarpace v. Sears, Roebuck & Co.*, 113 Wis. 2d 608, 609, 335 N.W.2d 844 (1983) ("In *Brockmeyer*, this court recognized a public policy exception to the employment at will doctrine, but rejected the notion that in each employment at will contract there was a duty to discharge in good faith."). Either way, Bukstein's breach of duty of good faith and fair dealing claim fails because we have concluded that Bukstein was serving as an at-will employee at the time of his termination and, thus, Dean owed him no duty to terminate his employment in good faith.

¶ 44. Bukstein attempts to avoid the application of *Brockmeyer* by contending that his argument is not that Dean terminated his employment in bad faith, but instead that "Dean breached its duty by its actions and

inactions leading up to and resulting in termination." Whatever Bukstein means to convey in articulating this distinction, he fails to explain how it could matter to the analysis under the rule unambiguously stated in *Brockmeyer*.

¶ 45.   Bukstein provides us with no additional reason, not already addressed in this opinion, to conclude that Dean is not entitled to summary judgment.[6]

## CONCLUSION

¶ 46.   For the foregoing reasons, we conclude that Dean is entitled to summary judgment on each of Bukstein's claims. Therefore, we reverse the decision of the circuit court denying Dean's motion for summary judgment and remand this action to the circuit court with directions to enter an order granting Dean's motion for summary judgment and dismissing Bukstein's complaint against Dean in its entirety.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[6] Our decision that Dean is entitled to summary judgment is dispositive, and therefore we need not and do not address other issues raised by either party on appeal.