COURT OF APPEALS
DECISION
DATED AND FILED

February 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1382**

Cir. Ct. No. **2020SC56**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

CROWN ASSET MANAGEMENT, LLC ASSIGNEE OF CITIBANK N.A.,

   PLAINTIFF-RESPONDENT,

V.

DAVID H. ALBAHRANI,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Bayfield County: KELLY J. McKNIGHT, Judge. *Affirmed*.

¶1    HRUZ, J.[1]  David Albahrani appeals from a judgment in favor of Crown Asset Management, LLC, ("Crown") for $1,485.27. The circuit court found that Albahrani failed to timely repay his credit card debt owed to Crown.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Albahrani argues that late fees are "delinquency charges" within the meaning of WIS. STAT. § 425.104(2), and that Crown provided him with a statutorily defective notice of right to cure because it failed to itemize late fees charged to his credit card account. Albahrani therefore argues that the court erred by denying his motion for summary judgment. We disagree and affirm.

## BACKGROUND

¶2    In January 2020, a "Notice of Right to Cure Default" letter was sent to Albahrani, stating that he was "in default on [a] consumer credit transaction" and that he owed a total of $1,068.77 to Crown. The debt purportedly arose from Albahrani's charges to a Sears MasterCard. The notice stated, among other things, that Albahrani could cure the default by paying $53 on or before February 17, 2020. The notice did not, however, provide any itemization of late fees or delinquency charges. It is undisputed that Albahrani was charged $251 in late fees before the notice of right to cure was sent. A "Fact Sheet" from Albahrani's account disclosed the penalty fees for a "[l]ate [p]ayment," stating that "[t]he fee will be $27; or $37 for any additional past due payment during the next six billing cycles after a past due payment."

¶3    Crown subsequently filed this small claims lawsuit in March 2020, alleging that Albahrani had failed to pay the debt owed. Albahrani answered Crown's complaint and alleged that Crown had failed to provide him with "a legally sufficient notice of right to cure." Albahrani later moved for summary judgment, arguing that Crown failed to comply with WIS. STAT. §§ 425.105(1) and 425.104(2) by sending him a notice of right to cure that did not include an itemization of delinquency charges. In particular, Albahrani contended that the

late fees charged to his account were delinquency charges that were statutorily required to be itemized on the notice.

¶4      The circuit court denied Albahrani's motion.  The court concluded that the late fees were not "delinquency charges" as that phrase is defined by WIS. STAT. § 422.203 and as it is used in WIS. STAT. § 425.104(2).  The court further concluded that WIS. STAT. § 422.202(2m) authorizes additional charges for open-end credit plans, such as Albahrani's, and "[subsec.] (2m)(a) specifically authorizes charges for late payments, which is what we're talking about here, and specifically excludes delinquency charges."  The lawsuit proceeded to a bench trial, after which the court entered judgment in favor of Crown.  Albahrani now appeals, challenging the court's denial of his summary judgment motion.

## DISCUSSION

¶5      We review denials of summary judgment de novo.  *Bukstein v. Dean Health Sys.*, 2017 WI App 54, ¶9, 377 Wis. 2d 688, 903 N.W.2d 130. Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, admissions and affidavits establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  WIS. STAT. § 802.08(2).  There do not appear to be any disputed issues of material fact, here; rather, the parties' dispute on appeal is purely one of law.

¶6      The sole issue on appeal is whether fees for late payments on an open-end credit plan—i.e., Albahrani's credit card account—are "delinquency charges" that must be itemized on a notice of right to cure under WIS.

STAT. § 425.104(2).[2]   The interpretation and application of a statute present questions of law that we review de novo, while benefiting from the circuit court's analysis.  *Security Fin. v. Kirsch*, 2019 WI 42, ¶10, 386 Wis. 2d 388, 926 N.W.2d 167.  Statutory interpretation begins with the language of the statute.  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶7      Aside from exceptions not relevant here, a merchant may not commence any action on a consumer credit transaction until the expiration of fifteen days after a notice of right to cure is given pursuant to WIS. STAT. § 425.104.  *See* WIS. STAT. § 425.105(1).  In short, § 425.105(1) requires a notice of right to cure that fully complies with § 425.104.  *See Indianhead Motors v. Brooks*, 2006 WI App 266, ¶14, 297 Wis. 2d 821, 726 N.W.2d 352.  As relevant to this appeal, a notice of right to cure must contain "a clear statement of the total payment, *including an itemization of any delinquency charges*, or other performance necessary to cure the alleged default …."  Sec. 425.104(2) (emphasis added).

¶8      Albahrani argues that the plain meaning of "delinquency charges," as used in WIS. STAT. § 425.104(2), includes late fees charged to an open-end credit plan.  In determining the meaning of the phrase "delinquency charges," we give the statutory language its common, ordinary and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning.  *See Kalal*, 271 Wis. 2d 633, ¶45.  "Delinquency

---

[2] Albahrani does not contest that his Sears MasterCard is an "open-end credit plan" as defined by WIS. STAT. § 421.301(27)(a).

charges" is not specifically defined in WIS. STAT. § 425.104, nor is it specifically defined under the general definitions of the Wisconsin Consumer Act ("WCA") in WIS. STAT. § 421.301.[3]  Nevertheless, we are convinced that "delinquency charges" has a special definitional meaning as it is used in § 425.104(2) because of the context in which the phrase "delinquency charges" is used throughout the WCA.  *See Kalal*, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes ….").

¶9      We begin with WIS. STAT. § 422.203, which is entitled "Delinquency charges."[4]  Notably, two other sections in the WCA specifically reference § 422.203 when discussing delinquency charges.  *See* WIS. STAT. §§ 421.301(20) ("delinquency charges under s. 422.203"), 422.209(5) ("delinquency charges under s. 422.203").  Such references indicate that § 422.203 provides the relevant authority regarding "delinquency charges" throughout the WCA.  That notion is buttressed by the language of § 422.203 itself.  *See* § 422.203(1)-(4).  Specifically, § 422.203(1) authorizes parties to a consumer credit transaction—"other than one pursuant to an open-end credit plan"—to agree to delinquency charges:

> With respect to a consumer credit transaction other than one pursuant to an open−end credit plan, the parties may agree to a delinquency charge on any installment not paid in full on or before the 10th day after its scheduled or deferred due date in an amount not to exceed $10 or

---

[3] The Wisconsin Consumer Act encompasses WIS. STAT. chs. 421-427.  *See* WIS. STAT. § 421.101.

[4] The title of a section in the statutes is not part of the statute.  WIS. STAT. § 990.001(6). We do not rely on the title of WIS. STAT. § 422.203 in discerning its meaning.

> 5 percent of the unpaid amount of the installment, whichever is less.

As provided under § 422.203(1), a delinquency charge means a charge imposed as a result of any installment not being paid in full on or before the tenth day after its scheduled or deferred due date.

¶10 Albahrani argues that WIS. STAT. § 422.203 does not bar delinquency charges on an open-end credit plan. He acknowledges that § 422.203(1) does not apply to open-end credit plans, but he contends that subsec. (1) accomplishes only "a limitation on the *maximum* amount that can be assessed as a delinquency charge," and that the language excluding open-end credit plans is an authorization for open-end credit plans to impose delinquency charges in excess of this maximum amount—presumably in any amount. He further argues that subsecs. (2)-(5) do not contain language excluding open-end credit plans, and those subsections therefore apply to open-end credit plans. Albahrani contends that if the legislature intended to exclude delinquency charges from an open-end credit plan, the legislature would have drafted subsecs. (2)-(5) as paragraphs under subsec. (1) instead of as separate subsections.

¶11 We reject Albahrani's arguments. First, WIS. STAT. § 422.203(1) explicitly authorizes delinquency charges on "a consumer credit transaction *other than one pursuant to an open-end credit plan*." (Emphasis added.) Although no statutory language in § 422.203 explicitly prohibits delinquency charges on an open-end credit plan, open-end credit plans are explicitly excluded from the only subsection that provides authorization to impose delinquency charges—i.e., § 422.203(1). No other language in the WCA referencing delinquency charges contemplates their use in open-end credit plans. What is more, it seems absurd that the exemption of open-end credits plans in subsec. (1) is not meant to apply

6

generally to such plans, but rather only to permit the imposition of agreed-upon charges on such plans—in *any* amount—for nonpayment on "installments," no matter how large that charge is.

¶12     Furthermore, the other subsections under WIS. STAT. § 422.203 do not contain any language authorizing delinquency charges on an open-end credit plan. Nor do they contain any indicia of those provisions applying to open-end credit plans. *Id.* Subsection (2) acknowledges—consistent with the ten-day period established in subsec. (1)—that a delinquency charge may not be collected "on an installment which is paid in full on or before the 10th day after its scheduled or deferred due date even though an earlier maturing installment or a delinquency charge on an earlier installment may not have been paid in full." That subsection clearly is to be read in conjunction with subsec. (1), which, again, expressly exempts open-end credit plans. Subsection (3), in turn, explicitly references "[a] delinquency charge under sub. (1)" in prefacing its provisions. Subsection (4) provides the interest rates that may be charged after the final scheduled maturity date—a date atypical of open-end credit plans—and prohibits delinquency charges on the final scheduled installment if such interest is charged. Finally, subsec. (5) provides that a violation of § 422.203 is subject to the remedies under WIS. STAT. § 425.304. Contrary to Albahrani's construction of these provisions, we conclude that their plainest reading contemplates their application only to consumer credit transactions involving other than open-end credit plans.[5]

---

[5] Of note, Crown asserts that the late fees at issue here were charged shortly after any payment was due, not eleven days later as required under WIS. STAT. § 422.203(1). We note that Albahrani does not dispute the correctness of this factual assertion or the propriety of the immediate imposition of the late fees.

¶13 In addition, we reject Albahrani's argument that if the legislature intended to exclude delinquency charges from open-end credit plans, then it would have drafted WIS. STAT. § 422.203(2)-(5) as paragraphs under subsec. (1) instead of as separate subsections. Again, subsec. (1) is the only provision that provides authorization for delinquency charges, and that subsection explicitly excludes open-end credit plans. Regardless of how § 422.203 is structured, the result is still the same: delinquency charges are not authorized for open-end credit plans.

¶14 Albahrani nevertheless argues that if delinquency charges could not be imposed on an open-end credit plan, then the clause in WIS. STAT. § 422.203(1) excluding open-end credit plans would be meaningless. We again disagree. Without the clause excluding open-end credit plans, an open-end credit plan would be included within the phrase "consumer credit transaction." *See* WIS. STAT. § 421.301(10). In short, the clause clarifies that an open-end credit plan is not among the "consumer credit transaction[s]" authorized to impose delinquency charges under § 422.203(1), to which the remaining subsections in § 422.203 also pertain.

¶15 Albahrani erroneously argues that ***Bahena v. Jefferson Capital Systems, LLC***, 363 F. Supp. 3d 914 (W.D. Wis. 2019), is instructive. In ***Bahena***, the court concluded that a creditor's letters did not provide sufficient notice of the right to cure because, among other deficiencies, the letters did not "include any sort of itemization of delinquency charges, even though it is undisputed that Bahena was being charged a 'late fee' every time she missed a payment." *Id.* at 923-24. Beyond that one statement, however, the court did not engage in any statutory interpretation regarding the meaning of "delinquency charges," nor did it consider or analyze WIS. STAT. § 422.203. *See **Bahena***, 363 F. Supp. 3d at

923-24. We are therefore unpersuaded by the court's conclusion that late fees constitute delinquency charges within the meaning of WIS. STAT. § 425.104(2).[6]

¶16    Next, Albahrani argues, for the first time in his reply brief, that other provisions in the WCA use the same language excluding open-end credit plans as WIS. STAT. § 422.203(1) does, and that those provisions do not prohibit open-end credit plans from taking such actions outlined in those provisions, but rather exclude open-end credit plans from the relevant limitations therein. He argues that the following provisions must be interpreted as only excluding open-end credit plans from the relevant limitations: WIS. STAT. §§ 422.201(1), 422.201(9), 422.202(1)(d), 422.306(2), 422.306(4), 422.205, 422.403 and 422.421(6).

¶17    We reject Albahrani's argument regarding these additional statutory provisions. First, Albahrani identifies these statutes and makes an argument in relation to them for the first time in his reply brief. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (we need not address arguments raised for the first time in a reply brief). Second, beyond identifying the statutes and stating their basic premise, Albahrani largely fails to explain how those statutes compare to WIS. STAT. § 422.203 and whether those statutes are indicative of whether delinquency charges are authorized on open-end credit plans. We need not further address his undeveloped argument. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

---

[6] Albahrani also relies on *Burney v. Thorn Americas, Inc.*, 944 F. Supp. 762 (E.D. Wis. 1996), which recognized that because the "reinstatement fee" at issue in that case "function[ed] the same as a delinquency fee, it [was] a delinquency fee." *Id.* at 772. That case, however, did not involve an open-end credit plan, but rather a rent-to-own contract. *See id.* at 763. The court did not address the issue presented here: whether fees for late payments on an open-end credit plan are delinquency charges. Albahrani's reliance on *Burney* is inapposite.

¶18     Third, although we need not address Albahrani's undeveloped argument raised for the first time in his reply brief, we pause to point out significant issues regarding some of Albahrani's identified statutory authority. Similar to the language in WIS. STAT. § 422.203(1), WIS. STAT. § 422.201(1) and § 422.201(9) do not authorize finance charges on open-end credit plans. Unlike delinquency charges under § 422.203, however, finance charges *are* explicitly authorized for open-end credit plans under § 422.201(10s). Similarly, WIS. STAT. § 422.202(1)(d) does not authorize additional charges on an open-end credit plan for checks that are returned unsatisfied. Nonetheless, § 422.202(2m)(a) authorizes a creditor of an open-end credit plan to impose "charges for the return of a dishonored check or other payment instrument." "[I]f a statute contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant in showing that a different intention existed." *Outagamie Cnty. v. Town of Greenville*, 2000 WI App 65, ¶9, 233 Wis. 2d 566, 608 N.W.2d 414 (citation omitted). In light of the language in these other provisions, the absence of any provision explicitly authorizing delinquency charges on open-end credit plans under § 422.203 is therefore significant and indicative of delinquency charges not being authorized on open-end credit plans.

¶19     Albahrani also argues that WIS. STAT. § 422.202(2m)(a) does not exclude delinquency charges on an open-end credit plan. He contends that § 422.202(2m)(a) authorizes a creditor of an open-end credit plan to collect any fees that are agreed upon by the creditor and the customer. According to Albahrani, "the statute allows the parties to agree to any fees in addition to the finance charge," presumably including "delinquency charges."

¶20     Even assuming that WIS. STAT. § 422.202(2m)(a) does not exclude delinquency charges by enumerating a list of specific additional charges,

§ 422.202(2m)(a) still does not authorize "delinquency charges" as that phrase is used in WIS. STAT. § 422.203.  Section 422.202(2m)(a) provides:

> (2m)  With respect to an open-end credit plan, regardless of when the plan was entered into:
>
> (a) A creditor may charge, collect and receive other fees and charges, in addition to the finance charge authorized under s. 422.201, that are agreed upon by the creditor and the customer.  These other fees and charges may include periodic membership fees, cash advance fees, charges for exceeding a designated credit limit, *charges for late payments*, charges for providing copies of documents and charges for the return of a dishonored check or other payment instrument.

(Emphasis added.)  Section 422.202(2m)(a) explicitly acknowledges that a creditor of an open-end credit plan may charge, in addition to the charges permitted under that paragraph, "the finance charge authorized under s. 422.201." Notably, however, § 422.202(2m)(a) does not authorize or reference delinquency charges under § 422.203.

¶21     Further, WIS. STAT. § 422.202(2m)(a) explicitly enumerates "charges for late payments" among potential charges authorized on an open-end credit plan.  Where possible, we give reasonable effect to every word in a statute, in order to avoid surplusage.  *See Kalal*, 271 Wis. 2d 633, ¶46.  Albahrani acknowledges that § 422.202(2m)(a) authorizes "charges for late payments," but he fails to offer any distinction between "charges for late payments" and "delinquency charges" that is consistent with his interpretation of "delinquency charges."  To give reasonable effect to the phrase "charges for late payments," we must interpret the phrase as being distinct from "delinquency charges," which, given the statutory context we have already explained, makes sense.  Indeed, there is nothing in the WCA that says a late fee on a credit card is a "delinquency

11

charge." The statutory text provides one apparent distinction: "delinquency charges" are subject to certain limitations under WIS. STAT. § 422.203 and are required to be itemized on a notice of right to cure under WIS. STAT. § 425.104(2); whereas "charges for late payments" are not subject to the same limitations under § 422.203, nor are they required to be itemized on a notice of right to cure.[7]

¶22 The question therefore becomes whether the late fees charged to Albahrani's account were "charges for late payments" or were "delinquency charges." Because WIS. STAT. § 422.203 does not authorize delinquency charges on an open-end credit plan, we can only conclude that the late fees charged to Albahrani's account were "charges for late payments" under WIS. STAT. § 422.202(2m)(a). As "charges for late payments" are expressly authorized for open-end credit plans under § 422.202(2m)(a), Crown was not required to itemize the charges on the notice of right to cure. *See* WIS. STAT. § 425.104(2).

¶23 Albahrani argues that "there is little rationalization why the legislature would require an itemization of delinquency charges … on closed end accounts but not on open end accounts." He contends that the legislature's rationale for requiring itemization of delinquency charges "would apply equally to open end or closed end plans." Except for noting certain similarities between open-end credit plans and other consumer credit transactions, Albahrani does not explain why it would be absurd to treat late fees on open-end credit plans differently than delinquency charges on other consumer credit transactions. In

---

[7] We recognize that there is little distinction between the phrases "charges for late payments" and "delinquency charges," as those phrases are used colloquially. Nonetheless, for the reasons that we have explained, the phrase "delinquency charges" has a special definitional meaning within the WCA and is distinct from the phrase "charges for late payments."

numerous sections of WIS. STAT. ch. 422, the legislature has drawn a distinction between open-end credit plans and other consumer credit transactions, frequently referring to "a consumer credit transaction other than one pursuant to an open-end credit plan." *See*, *e.g.*, WIS. STAT. §§ 422.201(1), 422.202(1)(d), 422.203(1), 422.303(1), 422.306(2). We need not divine the legislature's intent in requiring itemization only of delinquency charges; rather, we "interpret[] what the legislature actually enacted." *See **CED Props., LLC v. City of Oshkosh***, 2018 WI 24, ¶34, 380 Wis. 2d 399, 909 N.W.2d 136.[8]

¶24    In conclusion, the meaning of "delinquency charges" as referenced in WIS. STAT. § 425.104(2) is plain and must be interpreted within the context of WIS. STAT. § 422.203. Section 422.203 does not authorize delinquency charges on an open-end credit plan. WISCONSIN STAT. § 422.202(2m)(a), on the other hand, authorizes "charges for late payments" on an open-end credit plan. Because delinquency charges are not authorized on an open-end credit plan, we can only conclude that the late fees charged to Albahrani's open-end credit plan were not "delinquency charges" within the meaning of § 422.203 but, rather, "charges for late payments" under § 422.202(2m)(a). Accordingly, Crown was not required to itemize the charges for late payments on the notice of right to cure. *See* WIS. STAT. § 425.104(2). The circuit court properly denied Albahrani's motion for summary judgment.

---

[8] Albahrani provides citation to additional legal authority for the proposition that the late fees charged to his account were not finance charges. Crown concedes that the late fees were not finance charges. Accordingly, we need not address Albahrani's additional authority or consider whether the late fees were finance charges as opposed to "delinquency charges."

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.